21-1407, Patti Cahoo v. SAS Analytics, Steven Yancey-Powell, Laura Larson, S.A.C. 15-25, Jason Hawkins v. SAS Analytics Morning. Good morning, Your Honors. Jason Hawkins on behalf of the appellants. I'd like to reserve three minutes of my time for rebuttal this morning. Chief Judge Sutton, and may it please the Court. A little more than four years ago, this Court held that plaintiffs had plausibly alleged enough to survive a motion to dismiss. But this Court warned that if it wanted to survive summary judgment, plaintiffs would need to substantiate those allegations with supporting evidence. After a generous discovery period, they have not done so. The plausible allegations that kept this case alive four years ago have not evolved into sufficiently substantiated facts to survive summary judgment. Now, the two remaining State defendants asked this Court to reverse the District Court and grant them qualified immunity. The two challenged pre-depreparation forms at issue in this appeal provided sufficient notice to satisfy the requirements of procedural due process. But even if they did not, the rights were not so clearly defined through a similar case to provide Moffitt-Massey-Orgesky fair warning that their alleged conduct was unquestionably improper. Can I ask you, you mentioned the two forms. Do you think that the process question is different for each plaintiff? Because the amount of process provided should be measured based on when the deprivation occurred. And it's not entirely clear to me that the deprivation is the same. I understand that there's somebody who had potentially tax taken, and I understand there's maybe two other individuals, two other plaintiffs, who had their future benefits denied when they reapplied. So should we just examine the particular document and ask, did this satisfy due process? Or do we look at all of the process provided up to the point of deprivation? I think the answer to both questions is yes. You certainly look at the contents of the forms in dispute. But you also do have to look at when or if a deprivation occurred. Because this Court and the Supreme Court have held that you view due process and you judge its sufficiency based on kind of the aggregate. What information, what notice is provided to a plaintiff before they're deprived of their... Do you think that's more? So I saw on the record there's, for the tax deprivation, there was additional notices provided before any tax was taken. So presumably that should go into the calculus, I would think. It does go into the calculus as far as whether or not they were provided due process generally. I guess I'm focusing on these specific forms because that's what the district court said. They were insufficient, and therefore the court denied qualified immunity to these two defendants on that basis. But I do agree that due process must be viewed in the aggregate. This Court has held as much recently in Rosen v. Goetz in 2005, Yang v. City of Wyoming in 2015. And that's, I think, one of the fundamental errors that the district court made here in looking at these two forms, was just focusing on the four corners of one of the pages and overlooking the cumulative, the information that was provided contemporaneously. Can you generalize that all of the plaintiffs have pre-deprivation process claims? Should we just keep our focus on pre-deprivation process? I don't think you should keep it solely on pre. Explain then. I think the body of case law is clear that you have to look at the body of it, what is given to them up to and including the potential point of deprivation. So for one example, I think the pre-deprivation fraud questionnaire, the district court concluded that it lacked certain information. We think that the record contradicts that, that it does contain the exact information that the district court said it lacked. But I think that even if the district court were correct, it overlooks the fact that I think the requirements of due process are less rigorous at an early investigative stage. Last year this court decided Cunningham v. Blackwell, I believe Judge Sutton and Judge Batchelder were both on that case. And you'll recall that some professors were suspended from performing clinical work while the dental school investigated possible fraudulent activity with respect to medical data. And this court held that that partial suspension pending a further investigation did not strike a disheartened eye as unfounded or unfair. So here when we're looking at the questionnaires, it's much earlier in the process than any suspension. The agency is simply asking for additional information to analyze and use in reaching a future decision. And if these plaintiffs or any claimant are aggrieved by that decision, then they would have the right to protest that and receive a full evidentiary hearing and have appeal rights before it becomes final. It seems somewhat strange to me that we're talking about the contents of the forms when, at least with respect to two of the plaintiffs, the reason why they didn't know about this claim of fraud isn't because of the insufficient contents of the forms, it's because they never received the forms because they had moved. So how should we analyze whether your mailing to the address you had on file was sufficient to put them on notice? I think the issues with the mailing and what address it sent it to are more issues or more complaints that plaintiffs have made about the system, generally speaking, the MIDAS system. Whereas the focus here on these two specific defendants is what role did they play. And as far as I know, there is no allegation, there's no evidence that has been produced during discovery that either one of these defendants developed the mailing process or approved it. But I do think... I suppose your response would be, well, they have a duty to keep their address on file, and that seems perfectly reasonable to me to say, if you're getting benefits from us, it's your duty to keep your address on file. But their response would be these mailings happened many years after their benefits expired. So what is...I don't even understand, is the process you just sent it to the last known address, and at the time the agency thought that was sufficient? Sure, you're right, that the plaintiffs or any claimant does have an obligation to keep their address current. Because, again, recall, they're saying...they are the ones who provide an address, say, we would like to receive communications by mail, we would like to receive communications by email. Please send them here, or we would like to receive them electronically, please send them to this email address. Do you have any guidance that says you have a duty to keep the address updated several years after the fact? The handbooks that are provided to each claimant, they're in the record here at document 461-33. Page ID 28854 and 28856 are a couple of examples. So number one, it tells claimants, you must keep your address and phone number current. It also says that issues, including fraud, may arise on your claim up to six years after you receive benefits. So I believe that is putting them on notice, number one, of their obligation to provide correct contact information, but also to keep it current. Because you may be receiving information or issues may arise on your claim several years after the fact. I also want to talk about... This hasn't been raised by the parties, but I don't know if you know our Johnson v. Jones line of cases about interlocutory appeals and summary judgment. I don't know if that's ringing a bell for you, but the gist of it is that one can't bring an interlocutory appeal and just ignore what the facts are. You have to construe the inferences in favor in this case of the plaintiff. Since they've not raised the issue, you haven't had a chance to respond, and I just want to make sure you're... Are you in agreement that all the inferences have to be run in their favor? Yes, but the inferences, I think, must be reasonable, at least supported by the record. And I don't recall that case specifically, but I am aware of the limitations of interlocutory appeal. Judge Murphy, I think you've wrote extensively on this issue over the last few years. And so, if the crux of a party's disagreement on appeal is a factual one, then I agree that this court would lack jurisdiction over that issue. And that's why I'm trying to focus on the legal arguments here, because I don't want this to be perceived as quibbling with what the district court said the evidence showed or what inferences it draws. We've tried to point out that conclusions reached by the district court lack record support, or that the district court has no record support, that a summary judgment record does not create a genuine dispute on a material fact. I believe that is a legal question. This court held that in 2021 in Decrane v. Eckhart. So I am aware of that. I don't want to present a factual dispute here. I do want to talk a little bit, as well, about the fraud determination notices. And again, I think the error that the district court committed here was, again, focusing on that loan document and overlooking the fact that the district court was overlooking the entire package of information that would have been sent to a claimant at the same time. The fraud determination was not sent in isolation. It should not have been analyzed in isolation. Can we, can we, can you switch briefly, I guess, the, how do you, you suggested at the outset that our prior published opinion said that the plaintiffs had an obligation to prove the allegations in the complaint. But we did also say that the complaint alleged clearly established violations of the due process clause. So what, what allegations do you think the complaint alleged that we found showed a clearly established violation have not been adequately proved at this stage? Because that would seem to be the critical way to distinguish our prior opinion under your view. It's somewhat difficult to answer, only because the allegation was so broad. And similarly, the district court defined the right to due process at the broadest and most general level, which the Supreme Court and this Court has said you cannot do, especially when it comes to due process, because it is so fact-intensive and fact-specific, that different circumstances call for different process. And so here, neither the district court nor the plaintiffs have identified a significant violation of the due process clause. And so, in a similar enough case, and I'm not suggesting that an identical case is required, but a similar one with notices that contain similar language, it is beyond debate that they are unconstitutional. In a case about notices, a case about computer notices, what's the case? A case about notices. So in other words, the content of the fraud determination in conjunction with the eligibility determination and the list of overpayments, that those taken together do not contain due process. And in fact, if I may finish this. I might agree with you, but isn't that analysis inconsistent with our prior opinion? That's what I'm struggling with, as arguably our prior opinion said it was at the level of generality that was fine, at least the complaint allegations, and the complaint allegations included the idea that these notices violated due process. So what has changed between the pleading stage and the discovery? As the district court even said, a generous discovery period has happened in between. So when we're looking at a motion to dismiss, right, the court's focused on what is alleged, what's plausible. We now have a summary judgment record, they have to prove it. So if the allegation is that these forms provide insufficient notice, well, that's a legal question, a legal determination, whether or not the contents of them. So discovery would have produced the forms at issue. The district court would have reviewed that evidence and analyzed them. The problem is that it didn't, it just defined it so broadly, it didn't look at specific cases to say, yes, this body of case law shows that the contents of these forms, that these forms violate a clearly established right, and I think that the body of case law actually shows the opposite to be true, including cases cited by plaintiffs. I see that I'm out of time. Thank you so much. Good morning, Your Honor, it's my pleasure to court Kevin Ernst appearing on behalf of the plaintiffs. Your Honor, the MIDAS system that went into effect basically sacrificed the uninsurance claimants procedural rights, procedural due process rights in favor of expedient, expedient, expedient, expedient, expedient, expedient, expedient, expedient claims. And so we were able to get expedient and efficient, quote, unquote, bureaucratic findings for fraud determinations. The problem started with the questionnaires, which, by the way, we had the questionnaires when we filed the complaint. So the exact language of the questionnaires and the generic fraud determinations were included in our complaint, which this court previously ruled that the due process rights that we were alleging were clearly established. I was just going to say, I mean, we have all these cases all start the same way. Motions to dismiss are discouraged in qualified immunity cases. We think you should have discovery. This, of course, was a class complaint, so it was written even potentially more broadly. When you look at the cases that we invoked last time, you know, they're cases that say you have a property interest. That's not the debate here. They're really not cases that go to this issue, I would say. Now, that seems okay at the motion to dismiss stage, because you don't quite know it's anything plausible that could come out of this complaint. And the point of discovery sometimes is to refine the complaint. It's no longer a class case. So what is the clearly established case? Like, give me your best case. What is the case that we should say, yeah, anyone working in government would know you couldn't do this? Well, I have several, Your Honor. Well, just give me your best one, because when I hear several, it's usually a laundry list of all I could find in the brief. I just want to know, like the one when you say, if I'm talking to someone about why we should win this case, I always mention it, because there's just no way around it. I would say that the Crosby case is probably the most analogous. It involved unemployment claims. Isn't that Seventh Circuit? It is a Seventh Circuit case. Was that invoked in our last opinion? I believe so, yes. Where? I mean, I argued it in the brief. It's not in the clearly established section of our opinion. We haven't said Crosby is the law in the circuit. So if Crosby is the best one, we have to decide if Crosby applies, right? That's correct. But, Your Honor, with regard to the notice claims, we're not complaining about what language was on the forms.  Because the forms state conclusions. Okay, great. What's your best case for that point? I get the point. I think it's a good point. What's the best case that says that's the way to think about it? I would say the Transco is probably the best case that says you can't just make generalized conclusions. You have to have particularized claim or particularized factors about why you committed a crime. Or why you committed fraud or why you should be otherwise ineligible for benefits. And Transco specifically said things like the employee is not qualified or let me see if I can. The other thing about clearly established is to think through and give a response is this is Matthews versus Eldred's balancing. And I've written some decisions where I say you can't get rid of these cases on motion to dismiss because you just don't know what's going to happen. But it's also very hard, I think it becomes quite a significant issue at summary judgment figuring out what clearly established means in that setting. Because it is balancing and you've got to figure out what the competing sides of the balance are. And so that, in other words, makes it, I think, clear that at summary judgment it's kind of right to look at clearly established cases. And not just look at what's been established afresh. I agree with your honor and I think that's the law. But in this case, these forms were so bare bones that no reasonable person could look at them and think this would give somebody notice of what our fraud allegations are. No reasonable official could do that. There's just nothing specific about any of these questionnaires or fraud determinations that put a person on notice of what they did wrong. And so how can they rebut these claims, especially at the predetermination stage when you don't even get a hearing. You only can just write in. And if you're not informed specifically what you allegedly did wrong, you can't do that. How are you supposed to respond to that? Especially on this questionnaire that just has these multiple choice answers that are presumably nonsensical. I would agree with you. I wonder if our prior opinion had the case in mind of somebody who is actually currently receiving benefits and was given one of these forms. I'm sorry, I didn't hear that. Somebody who was currently receiving unemployment benefits was given this form and on the basis of the first form alone lost those benefits. So the only process they received before losing benefits was the fraud questionnaire. But that could be what our opinion was thinking might be clearly established that you have a clearly established right to a predeprivation hearing. It just strikes me as none of the four plaintiffs in this case fit that factual scenario because they were all already ineligible for the benefits because their benefit period had already expired and the agency was just looking back. So I think you would have to actually ask, when was the deprivation here? And it was much later in time. It wasn't that classic case of somebody who's actually receiving benefits. And then fails out the questionnaire wrongly and then loses benefits. Don't we have to look at all the process they received until there was an actual deprivation? Whether it was the taking of the tax funds for the one plaintiff or the denial of future benefits when they reapplied? Well, Your Honor, the notice has to be sufficient at every stage of the proceeding. I think that what Your Honor is alluding to might go more to the question of whether or not there was a fraud. The question of damages, when are damages essentially cut off? When would you say there was a deprivation of property here? Well, certainly when the UIA said you're not eligible for any more benefits. When they made that determination. But why? Because they had already received all the... They were ineligible for benefits for a reason totally unrelated to this fraud determination. The benefits had already expired. And the agency was just doing a post hoc review of prior cases. Well, with regard to one of the plaintiffs, I think it was Mendick. She, after the initial jobs that she had that she had found to commit fraud, she had got a new job, re-qualified for benefits. Then got terminated from that new job and applied for benefits. And they said, you're not eligible because... I would agree with you. So that would be the deprivation for her, right? The deprivation would be when she was denied future benefits because she became eligible again. And then this thing actually finally kicked in. But when the determinations informed the plaintiffs that they're no longer eligible for benefits, then that would dissuade them from applying for benefits. They've just been told they're ineligible. So what happens when that determination is made? Why would the fact that it dissuades them from applying be the deprivation of property? The reason I think this might be significant is because what came with the fraud determination was a right to a hearing. And so they would have had a right to a hearing before any deprivation of property occurred. They didn't exercise that right. You could argue that it was because of a lack of notice or whatnot. But under the facts of this case, they had a right to a hearing before any deprivation occurred. Our prior case of what was clearly established is you have a right to a hearing before the deprivation. And I'm just saying as a matter of fact, what happened here is they were eligible for hearings before their deprivations happened. I'm not sure I agree with you, Arne, because the determination says you're not eligible for benefits. Now, you can appeal in 30 days, but during that 30-day period, you're ineligible for your benefits. They were ineligible anyways. That's the point. There was no deprivation during those 30 days of anything. The deprivation on the facts of these cases were at the taking of the tax returns or years later when they reapplied and they were denied on the basis of this finding. But during that time, they could have received a hearing. But, Your Honor, due process protects also against the government's denying you a fair hearing. Whether or not the deprivation was legitimate or not, if you didn't get process, you still have a claim. Now, you can't claim like the damages you would for if they wrongfully terminated your benefits and you were entitled to say 10 weeks of benefits, you might not get that because you weren't eligible for those 10 weeks. But due process still recognizes a claim for being treated unfairly by the government. Whether or not the deprivation is in the end rightful or not. So certainly those plaintiffs have that deprivation. They were denied due process, they were denied the fair treatment of their government, and that's a... So what's the best evidence that shows Moffitt Massey participated in this? Right? Because you would agree there's no supervisory liability. So what's the best, what's your best shot on that one that shows she actually participated? Well, she was informed numerous times by Mr. Geske that... Tell me what you mean by that because she says no to that and he doesn't ever say, he's specific about individuals to whom he spoke, he doesn't mention her. So how is it that you would say he alerted her? Well, I think there's a question... Tell me why I'm wrong, just tell me the site. I think there's a question of fact whether he alerted her or not. I don't think he ever denied alerting her. He said, I informed at the beginning of the process and I informed later when the thing started going wrong. Okay, so tell me, just tell me what the nature of your argument is. Is the nature of your argument that he did spell out some people to whom he spoke and then he said, and then out of the points he said, I spoke to persons and you're saying it's the persons that allows you to say that's the fact dispute? I think it could be a question of fact, yes. I mean, if he doesn't deny that he... If he doesn't specifically deny that he... Was he asked that specific question? I can't remember, I don't believe so. I didn't do his deposition, but I don't believe he was. Okay, well, if she says he didn't speak to me, he spells out usually the people to whom he did speak. I don't understand why there's a fact dispute. I mean, you're using the word person or whatever the word is to, I guess, cover anyone in the department. That seems... It's also, Your Honor, that Ms. Moffitt-Massey did say she was aware of the problems with the notice requirements when she assumed the directorship. She was aware of the problems in 2013 before she took over. So she's aware of it, and once she becomes the director, she has a duty to correct it when she's aware of these problems. And she also just can't willfully ignore these types of problems that are systemic and so wide-ranging. There's Auditor General reports. There's letters from the Department of Labor. There's an incredible media crush that are covering this situation where upwards of 40,000 people were wrongfully accused of fraud. Wasn't there a specific process for changing the forms? And I just didn't think she was involved in that, and I don't know the testimony that says you need to trigger this process. Well, I think the Department of Labor informed us of multiple times of the problems with the forms, and she said she disagreed with them and said there's no problem with it. And the forms are so inadequate, they're so bare bones, and she has to know it. I mean, she approved the forms. It's actually stamped on the forms that it's approved by. Well, isn't the governor's name, the statute that is used to... I mean, that would create supervisory liability if the test is whether a person's name is on it, right? I mean, if the governor's name is on certain types of things, which is not unusual in government, you're not going to say that always makes the governor liable, right? I mean, that would create supervisory liability. But somebody has to approve that this form... It lists the statute, and somebody has to approve that this form complies with the statute, which includes notice requirements. And she's the one that approves that. The statute can't approve the form. The statute can't determine whether the form's in compliance with it. So somebody has to approve it. And in this case, it's Ms. Moffitt-Massey. And there's testimony that there are weekly and biweekly meetings with her. And there's all kinds of problems with the rollout of this MIDAS system, with the ongoing implementation. And she's in charge, and she's got to be aware of these problems. And she can't just stick her head in the sand and pretend nothing is going on when she's the director. You're just making a buck stops here, supervisory liability argument. That's what I thought we were supposed to be mindful of. But, Your Honor, she's the one that has the power to change it. Nobody else does. And she gets informed of it. Is that right? I thought there was a specific process for changing the forms. That was my earlier question. And it didn't start with her. It didn't start with her, but it ends with her. Okay, fine. If it didn't start, it wouldn't get to her. Oh, I'm sorry. I didn't understand your question. Right. But people did bring to her attention the problems. And your best evidence on that is Geske, who never mentions her by name. My best evidence is Geske, the Department of Labor letters, and the Auditor General audits. That she's informed of these problems. And then, instead of doing anything about it, she doubles down, as the lower court said, and states, well, that's not my understanding of these laws. And I'm going to continue to do it. So she's fully aware of the problems. She has the power to change anything. The only one with the power to change it. And she refuses to do it and keeps insisting that what she's doing is right. Despite all the evidence, all the information that she has that there are severe problems. My time is up, unless the court has any other questions. I think we're good. Thank you so much. Mr. Hawkins. Thank you very much, Your Honors. I'd like to begin by circling back to a question that Judge Murphy asked and I think maybe it became clearer to me what you were asking based on some questions to my opponent as far as the previous opinion from this court and what was plausibly alleged. And I think there the allegation was that the questionnaire or the determination in and of itself deprived me of property. And therefore, because they alleged that that lacked due process, that that was enough to go forward. So what would have happened in the interim, of course, is discovery, and I think even the district court concluded as much or if they didn't, they got it wrong that neither one of those, those were pre-deprivation forms neither one of those deprived any of these plaintiffs of property. So that was in the original complaint the idea that someone's getting unemployment benefits and suddenly they're pulled away in fewer than six months. I think that my recollection is correct or at least that's maybe how the previous opinion looked at it. They've alleged that these forms deprive them of property without sufficient notice. We now know that that's not true. Discovery has shown that. As you mentioned, they say right in there if you don't protest... What do you do? Let's just say that's totally right. Let's say that was in the original complaint. Let's say it's a fair way to read the opinion. What do you say to his point that, well, gee the way this really works is it's kind of rolling and it may be they didn't yank unemployment benefits in the middle of a six-month period but the norm is people keep reapplying it's understood you'll keep getting it and that these forms kind of do operate in the way of pulling stuff away. I think that's what he's trying to say. I don't think that Discovery bored that out or showed that to be accurate. As you mentioned, they received full benefit. It was only later that the agency tried to get that money back. With respect to effect on a future claim a claimant's going to have to prove their eligibility on that claim that could involve issues totally unrelated to this. Maybe they didn't earn sufficient wages within the previous year to establish what's called a benefit year. So it's somewhat speculative to say that this could deprive them of any benefits in the future. I did want to talk, too, about Transco because I believe I heard plaintiffs say that was their best case. It's true that this court said that simply stating big billing irregularities was insufficient, but the important context there was that that company had several contracts over several years in several different states, and the court said that the notice did not say which contract had the irregularities or give approximate dates of the missed billings. Here, all of these forms, the questionnaire and the terminations include the specific employer involved, the specific claim number involved, the benefit year involved, and relevant dates or weeks at issue. So if the best case is Transco, I think there are striking differences in these forms that specifically include and address the shortcomings in Transco. I think also another one would be City of Wyoming. Judge Sutton, you talked about notice having to alert people, provide alarm bell topics to give them an indication that this is serious. If you want to protest this, here's how you do it. We have all of those present here. The last point, just because it was brought up about personal involvement, I think the record is clear that Moffitt, Massey, and Geske were not involved in the design or implementation of MIDAS, and that I do believe that the attempt here is to hold them liable based on where they fall in an org chart. As this court is well aware, that is not a sufficient basis to impose liability, and we would ask that the court reverse and grant them qualified immunity. Thanks to both of you for your helpful briefs and arguments. We appreciate them. The case will be submitted, and the clerk may call the next case.